UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


MARK RAYMOND SAVERY,
     Petitioner,

v.                                                              CASE NO. 6:09-cv-810-Orl-31DAB


SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,
     Respondents.
_____

## ORDER

     This case is before the Court on a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Mark Raymond Savery ("Petitioner"), alleging six claims for relief (Doc. 1). The Court ordered Respondents to show cause why the relief sought in the petition should not be granted (Doc. 7).  Thereafter, Respondents filed a response in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. 9).  Petitioner filed a reply and a supplemental reply to the response (Docs. 16, 17).  Upon due consideration of the petition, the response, the replies, and the state-court record contained in Respondents' appendix, this Court concludes that the petition must be denied.

## I.    Procedural History

     On March 21, 2006, Petitioner was charged by information with two counts of sexual

battery with a deadly weapon or physical force (App. A).[1]  On August 16, 2006, pursuant to a plea agreement, Petitioner entered a guilty plea to one count and the State filed nolle prosequi on the other count (App. D).  Petitioner was sentenced to fifteen (15) years in prison followed by ten (10) years of sexual offender probation (App. D).  Because of a prior conviction for sexual battery under Florida Statute § 794.011, Petitioner was designated a sexual predator and treatment with medroxyprogesterone acetate ("chemical castration") was ordered for the duration of his probation (App. D).

On September 18, 2006, Petitioner filed a motion for correction and modification of defective and/or illegal chemical castration sentence.  The motion sought to find the Florida statute authorizing chemical castration unconstitutional (App. E).   The motion was denied by the trial court, and the Fifth District Court of Appeal *per curiam* affirmed on December 12, 2006 (App. F, G).  Mandate issued on December 29, 2006 (App. I).

On June 25, 2007, Petitioner filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief which raised five issues (App. J).  The trial court found one claim procedurally barred, denied three claims, and allowed Petitioner to amend one facially insufficient claim (App. M).  The amended claim was denied on August 8, 2008 (App. O).  Petitioner appealed, and Florida's Fifth District Court of Appeal *per curiam* affirmed on February 24, 2009 (App. S).   Mandate issued on April 23, 2009 (App. T).

The instant petition was timely filed on May 7, 2009 (Doc. 1).

---

[1]Unless otherwise noted, referenced appendices refer to exhibits in Respondents' Appendix filed September 9, 2009 (Doc. 12).

II.   **Legal Standards**

  A.   *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) articulate independent considerations a federal court must consider.  *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

  Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly,

habeas relief is appropriate only if that application was "objectively unreasonable." *Id*. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *Bell v. Cone*, 535 U.S. 685, 697 n.4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.     Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test to determine whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687-88. In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. Thus, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

> As observed by the Eleventh Circuit Court of Appeals:
>
> The test [for ineffective assistance of counsel] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

A guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice. *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). The Supreme Court has held that the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In order to obtain relief under *Strickland*, a defendant who pleaded guilty must show that: 1)

5

his lawyer's performance was deficient; and 2) a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 59. The *Hill* court explained the prejudice requirement with specific regard to a defense counsel's alleged failure to investigate potentially exculpatory evidence:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Id.* at 59. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering the facts of the case and the circumstances at the time of counsel's conduct. *Strickland*, 466 U.S. at 691.

**C.**     ***Exhaustion and Procedural Default***

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Specifically, the AEDPA provides, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that

(A)     the applicant has exhausted the remedies available in the courts of the State; or

(B)

(I)     there is an absence of available State corrective process; or

6

(ii)     circumstances exist that render such process ineffective to
protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).  Exhaustion of state remedies requires that the state prisoner "fairly

presen[t] federal claims to the state courts in order to give the State the opportunity to pass

upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513

U.S. 364, 365 (1995).   The petitioner must apprise the state court of the federal

constitutional issue, not just the underlying facts of the claim or a similar state law claim.

*Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). The United States Supreme Court has

explained:

> [C]omity concerns dictate that the requirement of exhaustion is not satisfied
> by the mere statement of a federal claim in state court.  Just as the State must
> afford the petitioner a full and fair hearing on his federal claim, so must the
> petitioner afford the State a full and fair opportunity to address and resolve
> the claims on the merits.

*Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).

In addition, a federal habeas court is precluded from considering claims that are

not exhausted but would clearly be barred if returned to state court. *Coleman v. Thompson*,

501 U.S. 722, 735 n.1 (1991) (stating that if a petitioner has failed to exhaust state remedies

and the state court to which the petitioner would be required to present his claims in order

to meet the exhaustion requirement would now find the claims procedurally barred, there

is a procedural default for federal habeas purposes regardless of the decision of the last

state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have

been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court.  *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default.  "To establish cause for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  *Henderson v. Campbell*, 353 F.3d 880,  892 (11th Cir. 2003).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Actual innocence means factual innocence, not legal insufficiency.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

8

III.   **Analysis**

A.   *Claim One*

Petitioner alleges that the trial court erred by denying his motion for correction and

modification of a defective or illegal chemical castration sentence and for failing to find

Florida Statute § 794.0235(1)(b) unconstitutional (Doc. 1 at 4).[2]   Specifically, Petitioner

alleges: 1) that the statute is unconstitutionally vague because it fails to set forth legislative

---

[2]   Florida Statute § 794.0235 reads in pertinent part:

(1)Notwithstanding any other law, the court:

. . .

(b)Shall sentence a defendant to be treated with medroxyprogesterone acetate (MPA), according to a schedule of administration monitored by the Department of Corrections, if the defendant is convicted of sexual battery as described in s. 794.011 and the defendant has a prior conviction of sexual battery under s. 794.011.

If the court sentences a defendant to be treated with medroxyprogesterone acetate (MPA), the penalty may not be imposed in lieu of, or reduce, any other penalty prescribed under s. 794.011. However, in lieu of treatment with medroxyprogesterone acetate (MPA), the court may order the defendant to undergo physical castration upon written motion by the defendant providing the defendant's intelligent, knowing, and voluntary consent to physical castration as an alternative penalty.

(2)(a)An order of the court sentencing a defendant to medroxyprogesterone acetate (MPA) treatment under subsection (1), shall be contingent upon a determination by a court appointed medical expert, that the defendant is an appropriate candidate for treatment. Such determination is to be made not later than 60 days from the imposition of sentence. . .

(2006).

guidelines for determining appropriateness of treatment; and 2) the statute's option of physical castration in lieu of chemical castration amounts to cruel and unusual punishment (Doc. 1 at 4). In his reply, Petitioner argues for the first time that he has not been examined by a medical expert as required by statute and as such, this portion of his sentence should be stricken (Doc. 16 at 10).

Petitioner raised this issue in a motion for sentence correction filed pursuant to Florida Rule of Criminal Procedure 3.800 (App. E). The trial court denied relief noting that, because Petitioner did not file a direct appeal of his sentence, the only section of Rule 3.800 applicable to an illegal sentence was 3.800(a).[3] The court further noted that the claim was procedurally barred under 3.800(a) because:

> [W]hether a sentencing statute is constitutional cannot be raised for the first time in a Rule 3.800(a) motion. This type of issue, which seeks a change in the law, must be raised at sentencing and then on direct appeal. Rule 3.800(a) is limited to correcting sentences which are patently illegal on the face of the record.

(App. F at 3) (quoting *Thomas v. State*, 778 So. 2d 429 (Fla. 5th DCA 2001)). The Fifth District Court of Appeal *per curiam* affirmed (App. G). Respondents argue that this claim must be dismissed as it was ruled procedurally barred by the last state court to consider the claim (Doc. 9 at 15). Because the trial court's decision rested upon an independent and adequate state procedural ground, this Court agrees.

A review of Florida case law pertaining to Florida Rule of Criminal Procedure 3.800

---

[3]Petitioner did not indicate the section of Rule 3.800 under which the motion was filed.

clearly demonstrates that 3.800(b) applies only to direct appeals of a sentence and was inapplicable to Petitioner since he took no direct appeal. *See Perry v. State*, 849 So. 2d 324, 25 ("[R]ule 3.800(b), as a whole, is structured to apply only to a direct appeal of a sentence."); *Cooper v. State*, 919 So. 2d 516 (Fla. 1st DCA 2005) ("[Rule 3.800(b)] was designed for use only in a direct appeal from the sentence at issue.").[4]   Accordingly, although not specified as such, Petitioner's motion was necessarily filed pursuant to 3.800(a).

Rule 3.800(a) provides that "a court may at any time correct an illegal sentence imposed by it." Fla. R. Crim. P. 3.800(a).  Although the rule does not provide a definition of "illegal sentence," the Florida Supreme Court has held that a sentence is illegal if it "imposes a kind of punishment that no judge under the entire body of sentencing statutes could possible inflict under any set of factual circumstances." *Carter v. State*, 786 So. 2d 1173, 1181 (Fla. 2001).  The illegality must be of a fundamental nature. *Wright v. State*, 911 So. 2d 81, 84 (Fla. 2005). However, because not all sentencing errors considered "fundamental" on direct appeal necessarily constitute an illegal sentence, the class of errors subject to correction under Rule 3.800(a) is narrower than the class of fundamental errors that can be raised on direct appeal. *Maddox v. State*, 760 So. 2d 89, 100-01 (Fla. 2000) ("We

---

[4] Respondents argue that a Rule 3.800(b) motion was  untimely– a finding not made by the trial court (Doc. 9 at 13).  A state court's interpretation of its own laws is not within the scope of federal review, and this Court must defer to the state court's interpretation unless it is untenable or amounts to a subterfuge to avoid federal review of a constitutional violation. *See Garner v. Louisiana*, 368 U.S. 157, 166 (1961); *Oxborrow v. Eikenberry*, 877 F.2d 1395 (9th Cir. 1989).  Accordingly, for the purposes of this review, this Court will assume that Petitioner's Rule 3.800 motion was timely.

emphasize that the fact that we consider a sentencing error a fundamental error correctable on direct appeal is no guarantee that it will be correctable at any time by a post-conviction motion.").

No published Florida cases discuss the constitutionality or legality of Florida Statute § 794.0235. However, Florida courts have been clear that a constitutional claim cannot be raised for the first time in a Rule 3.800(a) motion. *Thomas*, 778 So. 2d at 430 ("Whether a sentencing statute is constitutional cannot be raised for the first time in a Rule 3.800(a) motion."); *Pleas v. State*, 42 So. 3d at 980,981 (Fla. 1st DCA 2010)("[Rule 3.800(a)]cannot be used as a vehicle for challenging the constitutionality of a sentencing statute"); *Moss v. State*, 994 So. 2d 382 (Fla. 3d DCA 2008) (movant who failed to raise a constitutional issue on direct appeal may not do so in 3.800(a) motion).[5] Petitioner did not raise the issue of the constitutionality of  Florida Statute § 794.0235(1)(b) at sentencing or on direct appeal. Consequently, the constitutional claim was defaulted.

Federal habeas courts may not "consider claims that have been defaulted in state court pursuant to an independent and adequate state procedural rule, unless the petitioner can show 'cause' for the default and resulting 'prejudice,' or 'a fundamental miscarriage of justice.'" *Mincey v. Head*, 206 F.3d 1106, 1135-36 (11th Cir. 2000) (citing *Coleman v.*

---

[5]*See also Maxlow v. State*, 636 So. 2d 548 (Fla. 2d DCA 1994) (claim that condition of probation was unconstitutionally vague waived by not raising it in trial court either when condition was imposed or by motion to strike); *Rider v. State*, 724 So. 2d 617, 619 (Fla. 5th DCA 1998) (claim that a statutory condition of probation was unconstitutionally vague must be preserved for appeal); *Medina v. State*, 604 So. 2d 30, 30 (Fla. 2d DCA 1992) (objection to special conditions of probation as being unconstitutionally vague or improper waived by failure to object or file a motion to strike).

*Thompson*, 501 U.S. 722, 750 (1991) and *McCoy v. Newsome*, 953 F.2d 1252, 58 (11th Cir. 1992)).  Petitioner is unable to meet the narrow exceptions to the procedural default bar. He alleges no cause for the default, and any claim of actual innocence is unsupported by the record and negated by Petitioner's guilty plea.  Furthermore, Petitioner's allegation that he has not been examined by a medical expert as required by Florida statute has not been raised below and is an issue of state law which cannot be reviewed by this Court.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law ...."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Hendrix v. Secretary, Fla. Dep't of Corr.*, 527 F.3d 1149, 1153 (11th Cir.2008) (a violation of state law is not a ground for federal habeas relief).

Because Petitioner is unable to satisfy the exceptions to the procedural default bar, and because any other issues raised in this claim are issues of state law, this claim is barred from habeas review and is denied.

### B.    *Claim Two*

Petitioner alleges that he was denied effective assistance of counsel "based on a conflict of interest created by the shortage of attorneys and lack of proper budget in the Ninth Judicial Circuit Public Defenders' Office."  (Doc. 1 at 5).  Claim two fails to make any specific allegations of ineffective assistance.  Rather, by stating without extrapolation, that the public defenders' office had such a backlog of cases that "[Petitioner] was deprived of any meaningful representation," the claim appears to be merely an explanation for

13

counsel's alleged failures (Doc. 1 at 5).  As such, claim two is subsumed by the allegations in claims three through six and will not be separately addressed by this Court.[6]

### C.      Claims Three and Six

In substantively identical claims three and six, Petitioner argues that his guilty plea was coerced because he was afraid that counsel would not be prepared for trial and he would be found guilty and receive a life sentence as a result (Doc. 1 at 6).  Petitioner alleges that, prior to the plea colloquy, he met with counsel who explained to him that the limited budget and backlog of cases at the public defenders' office meant that no investigation had been done on his case (Doc. 1 at 12).  Counsel then told Petitioner that "no matter how much evidence he presented, the jury always believes the victim." (Doc. 1 at 12).  Counsel recommended that Petitioner take the plea offered by the State because, if he went to trial, "he would lose and receive life in prison." (Doc. 1 at 12).  Petitioner alleges that "these statements substantially created a well-founded fear in [Petitioner] that he was surely doomed if he dare go to trial under such circumstances." (Doc. 1 at 12).  Petitioner raised this issue as ground two of his Rule 3.850 motion for post-conviction relief.  The trial court denied relief, stating:

> The Court asked Defendant whether anyone had coerced, threatened, intimidated, or promised him anything to get him to enter the plea, other than

---

[6]Petitioner raised this claim in ground one of his rule 3.850 motion for post-conviction relief and the trial court denied relief stating: "While the backlog of cases and lack of funding may have been an unfortunate reality for him, it was no different from the reality faced by every other defendant represented by the Public Defender's Office.  It does not establish a conflict of interest and does not render counsel automatically ineffective.  Therefore, this claim lacks merit." (App. M at 2).

what had been put on the record.  He responded, "just two life sentences."
The Court asked whether he had been coerced into entering the plea,
and he admitted he did not.  He also agreed he was entering the plea in his
best interest.  The fact he was told he faced a life sentence if convicted did not
constitute coercion; counsel and the trial court would have been remiss if they
had *not* warned him of the maximum possible sentence.  Finally, he replied,
"yes, sir" when asked if he was satisfied with his attorney's services.
Therefore, this claim is refuted by the record.

(App. M at 3) (citations to record omitted).   A review of the record supports the trial

court's conclusion that Petitioner's guilty plea was not coerced.

In Petitioner's plea colloquy, the following exchange occurred:

COURT:          Did you read this plea form before you signed it?

[PETITIONER]:   Yes, Sir.

COURT:          And you've had an opportunity to discuss the plea form
                and your case with your attorney?

[PETITIONER]:   Yes, Sir.

COURT:          Did you understand the rights that are contained in this
                plea form, such as your right to plead not guilty, the
                right to have your attorney represent you through a jury
                trial, the right to compel witnesses to testify in your
                behalf and cross-examine the witnesses against you, the
                right to testify or to remain silent, the right to present
                any – present any defenses, including any and all
                motions, and the right to require the state to prove your
                guilt beyond a reasonable doubt?

                Did you understand those rights and do you want to
                give up those rights here this morning?

[PETITIONER]:   Yes, Sir.

COURT:          Are you currently taking any drugs, medicines or
                alcohol?

15

| | |
|---|---|
| [PETITIONER]: | No, Sir. |
| COURT: | Do you suffer from any mental illnesses now or in the past? |
| [PETITIONER]: | No, Sir. |
| COURT: | Has anyone coerced you, threatened you, intimidated you, or promised you anything other than what we put on the record and what's in this plea form to get you to enter this plea? |
| [PETITIONER]: | Just two life sentences. |
| COURT: | Well, was that coerced?  Do you feel like you've been coerced into entering this plea? |
| [PETITIONER]: | Well, no, it – it's just – |
| COURT; | Is this a plea that's in your best interest? |
| [PETITIONER]: | Yes, Sir. |
| COURT: | Okay, are you entering this plea freely and voluntarily? |
| [PETITIONER]: | Yes. |
| COURT: | Did you understand the maximum penalty for the charges to which you are pleading are up to life in prison? |
| [PETITIONER]: | Yes. |

(App. C at 10-11).  Petitioner was then asked by the court whether he was satisfied with his

attorney's services, and Petitioner replied affirmatively (App. C at 12).

Petitioner states that "no weight should be attached either to [his] initial expression

of satisfaction with [counsel's] performance at the time it is being provided or to [his] later

expression of dissatisfaction." (Doc. 1 at 10).   Although inartfully worded, Petitioner appears to argue that no *greater* weight should be attached to his expression of satisfaction with counsel made on the second day of his plea hearing than to his initial expressions of dissatisfaction made on the first day of the hearing.[7]

Petitioner's argument is not supported by law.  Rather, the Supreme Court has held that a petitioner's own representations to the trial court during his plea colloquy constitute "a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) ("If a defendant understands the charges against him, understands the consequences of a guilty plea and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review.").  Accordingly, the trial court's reliance on Petitioner's own statements was not unreasonable.[8]

---

[7] On the first day of his plea hearing, Petitioner expressed dissatisfaction with counsel's inattentiveness and with counsel's emphasis on the strength of the State's case (App. B at 4-7). Petitioner told the court that his family was attempting to hire a private attorney and asked for more time to do so (App. B at 5).  The court told Petitioner that it would continue the case "one last time" and he could go to trial (with current or new counsel), but the State would revoke the plea offer (App. B at 10).  The court then continued the hearing until the following day so that Petitioner could further discuss the plea with counsel (App. B at 12).

[8] Petitioner asserts in his reply (Doc. 16) that, because his statement expressing satisfaction with counsel was not made under oath, it cannot be relied upon by this Court. A claim raised for the first time in a reply brief is deemed waived. *United States v. Whitesell*, 314 F.3d 1251, 1256 (11th Cir. 2002).  Even so, a review of the record shows that Petitioner was sworn on the first day of his two day plea hearing and he presents no evidence indicating that this oath did not apply to testimony given on the second day of the hearing

Petitioner argues that "the fact that [he] agreed with his counsel's actions at the time does not shield counsel from judicial review."[9] (Doc. 1 at 10). In the context of a guilty plea, this statement is true only to the extent that counsel's alleged failures affected the voluntariness of Petitioner's plea. *See* discussion *infra* § D. Furthermore, although a defendant's attestation of voluntariness at the time of his plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *Blackledge*, 431 at 74-75. He must show such a strong degree of misunderstanding, duress, or misrepresentation by the court, prosecutor, or his own counsel that his plea would become a constitutionally inadequate basis for imprisonment. *Id.* Petitioner does not meet this heavy burden. The plea hearing transcript clearly shows that, while Petitioner was reluctant to accept a plea agreement, he did not do so involuntarily. In fact, the transcript of the plea hearing indicates that Petitioner was engaged during the proceedings, extensively questioned the court and conferred with counsel regarding the chemical castration sentence and other aspects of the deal, asked for a two week furlough to arrange care for his family, and requested that the court impose a lower minimum payment of costs during probation (App. B at 6-19). After

---

(App. B at 3). Notably, Petitioner does not contend that the testimony given at the hearing was false.

[9]As support for this statement, Petitioner cites *Evans v. State*, 737 So. 2d 1167 (Fla. 2d DCA 1999). Notwithstanding the fact that *Evans* is not "clearly established federal law" as defined by 28 U.S.C. § 2254(d)(1), the case simply does not apply to representation during a plea hearing. Rather, *Evans*, referred to a petitioner's acquiescence to defense counsel's failure to cross examine an expert witness.

sentencing, Petitioner told the court that "I am taking this [plea] now because it's the only thing I can do.  Its my interest to take this plea because my prior record and everything." (App. C at 19).

Petitioner's assertion that his guilty plea was coerced because he entered the plea out of fear of receiving life in prison if convicted at trial is meritless (Doc. 1 at 7-8). Petitioner argues that the State prosecutor's threat to take Petitioner to trial and seek two life sentences if convicted was an "improper promise" made to induce him to accept the plea (Doc. 16 at 7-21).   At Petitioner's plea hearing, the prosecutor told the court that, if Petitioner did not accept the State's offer of fifteen years in prison, "we will withdraw the offer and we will seek putting him in jail for the rest of his natural life." (App. B at 9). Petitioner alleges that counsel told him that the court would not delay the trial, even if he obtained other counsel and that the plea offer would be revoked if he did not accept the offer that day (Doc. 1 at 7).[10]

The fact that Petitioner may have based his decision to enter a guilty plea out of fear of receiving two life sentences if convicted at trial does not make his plea involuntarily.  A

_____

[10] Any allegation that the trial court would not have continued the case to allow counsel time to prepare for trial is clearly refuted by the record.  The court stated:

> Well, if you don't want Mr. Levine, what I'm going to end up doing is continuing your case one last time, and the state's revoking the plea offer and you're going to goto trial with either Mr. Levine or new counsel.  I think that's what your choices are today.  I think that's what [the State] just put on the record that he's going to revoke the plea offer.

(App. B at 10).

reduced sentence pursuant to a plea agreement is an important factor for any defendant to consider when deciding whether to enter into a plea and waive his right to a jury trial. *Roberts v. United States*, 472 F.2d 1195, 96 (5th Cir. 1973) (guilty plea entered with the advice of counsel is not rendered invalid if made to avoid a harsher penalty).  The State may not coerce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant. *Brady v. United States*, 397 U.S. 742, 750, 751 (1970).  However, only physical harm, threats of harassment, misrepresentations, or "promises that are by their nature improper as having no proper relationship to the prosecutor's business ( e.g., bribes)" render a guilty plea legally involuntary. *Brady*, 397 U.S. at 755.  No constitutionally impermissible coercion arises when a defendant is forced to choose between the possibility of a long  prison sentence if he goes to trial or a shorter sentence if he pleads. *See Brady*, 397 U.S. at 751.   Although Petitioner's fear of receiving two life sentences if convicted at trial was obviously a determinative factor in Petitioner's decision to plea (App. C at 11), neither counsel nor the State prosecutor improperly threatened, forced, or coerced Petitioner into entering the guilty plea, as he himself acknowledged during the plea hearing (App. C at 10-11).

Nor does the record demonstrate prejudice. In order to prove prejudice, petitioner must show that, but for counsel's alleged deficiencies, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59. The assertion by Petitioner that he would have preferred a trial to the guilty plea he entered is not credible (Doc. 1 at 18).  The terms of the agreement were favorable to Petitioner. In return for the plea,

Petitioner received a much reduced sentence than what he otherwise might have received, and the State agreed to forego filing a failure to appear charge against Petitioner (App. C at 2). The State recovered the knife used in the attack and had the victim's statement that she had been raped.  Furthermore, Petitioner had a prior conviction for sexual battery which would have subjected him to enhanced penalties, even if convicted of a lesser included charge (App. B at 8).  Finally, Petitioner admitted under oath that it was in his best interests to take the plea because of his prior record (App. C at 19).

Accordingly, Petitioner has failed to establish that the state court's decision regarding claims three and six were contrary to clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  These claims are denied pursuant to 28 U.S.C. § 2254(d).

### D.   *Claims Four and Five*

In claims four and five, Petitioner alleges that he was deprived of effective assistance of counsel because counsel failed to file a motion to suppress statements made to police and because counsel did not investigate, interview, and secure witnesses for the defense that may have provided exculpatory testimony (Doc. 1 at 6).  Petitioner alleges that he was prejudiced by the lack of preparation because "[had counsel] investigated, prepared, and filed a motion to suppress, or interviewed and procured the testimony of Kip and Diane Thorton, [and] Tauyna Zywiec as witnesses for the defense, the Petitioner would not have plead [sic], but would have proceeded to trial." (Doc. 1 at 8).

21

In claim four, Petitioner alleges that counsel failed to seek suppression of a statement made to police without the benefit of his Fifth Amendment rights provided by *Miranda v. Arizona* (Doc. 1 at 6).[11]  He alleges that, prior to receiving his *Miranda* warnings, he made numerous statements to the police regarding a consensual sexual encounter with the victim (Doc. 1 at 7).  Petitioner claims that counsel told him he would move to suppress the statements, but the day before the plea hearing, Petitioner discovered counsel had not done so due to excessive case load (Doc. 1 at 7).

Petitioner raised this issue as ground three of his Rule 3.850 motion for post-conviction relief, and the trial court denied relief because, during the plea colloquy, Petitioner had indicated satisfaction with his attorney's services and because the admissions made to the police "were not critical to the State's case, or even particularly incriminating" and, as such, Petitioner could not establish prejudice (App. O at 4).

In claim five, Petitioner alleges that he was denied effective assistance of counsel because counsel failed to investigate witnesses for the defense to whom the purported victim had made exculpatory statements that contradicted the statements she initially made to police (Doc. 1 at 6). Petitioner alleges that he provided counsel with the names, address, and telephone numbers of witnesses who were in the house at the time of the encounter and would testify that the events could not have happened as the victim alleged (Doc. 1 at 7).

---

[11]*Miranda v. Arizona*, 394 U.S. 436 (1966) (statements made in response to interrogation by a defendant in police custody will be admissible at trial only if the prosecution can show that the defendant was informed of the right to consult with an attorney before and during questioning).

In support of this claim, Petitioner attaches a notarized letter from Tanya M. Zywiec, dated November 30, 2009, stating that the victim had admitted to a one night stand with Petitioner and that she was angry with Petitioner because she wanted more of a relationship (Doc. 17 at Ex. H).  Petitioner alleges that counsel told him he would investigate the witnesses, but that due to an overwhelming case backlog, the investigation was never done (Doc. 1 at 7).

Petitioner raised this issue as ground four of his Rule 3.850 motion for post conviction relief, and the court denied the claim stating that "[a]t the time he entered the plea, Defendant knew that counsel had not interviewed or secured these individuals as defense witnesses, but he still chose to enter a best interest plea." (App. M at 4).  The trial court also noted that Petitioner had expressed satisfaction with counsel's services at the plea hearing, and "[t]herefore, he cannot establish prejudice or show that his plea was involuntary." (App. M at 4).

The United States Supreme Court has long recognized "the general rule that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings." *Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975) (citing *Brady* , 379 U.S. at 742; *McMann v. Richardson*, 397 U.S. 759 (1970); and *Parker v. North Carolina*, 397 U.S. 790 (1970)).  Moreover, once a guilty plea has been entered by a criminal defendant, all non-jurisdictional defects in the proceedings prior to the plea are waived, including all claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir.1983). Therefore, to the extent Petitioner complains that trial counsel failed to adequately investigate the case, prepare a motion to

suppress, or interview witnesses, these are non-jurisdictional matters unrelated to the voluntariness of his plea, and are waived by Petitioner's guilty plea. *See United States v. Broce*, 488 U.S. 563 (1989).

Furthermore, Petitioner simply cannot show that his plea was involuntary based upon matters known to him at the time he decided to plead guilty.  Petitioner knew of counsel's failure to move to suppress his statements to police and of the allegedly exculpatory witnesses and still chose to accept the plea agreement instead of going to trial. Therefore, both claims were waived by Petitioner's guilty plea and he is not entitled to habeas review on those claims.  Moreover, Petitioner stated under oath that he was satisfied with counsel's service and that it was in his best interest to take the plea (App. C at 12, 19).

A review of the record makes clear that Petitioner's claims also fail to meet the *Hill* prejudice standard. Petitioner alleges that, had counsel moved to suppress his statements to police or interviewed his witnesses, he would have proceeded to trial (Doc. 1 at 8). Petitioner argues that "[p]ractically speaking,. . . [counsel] could not say what a prompt and thorough going investigation would disclose to the facts of the case, had [counsel] actually endeavored to discover." (Doc. 1 at 11).   To the extent that Petitioner alleges that counsel should have discovered additional exculpatory evidence, this claim is conclusory and cannot maintain a claim for ineffective assistance of counsel. *See Tejada v. Duggar*, 941 F.2d 1551, 59 (11th Cir. 1991) (petitioner not entitled to federal habeas relief on ineffective assistance of counsel claims where the claims are conclusory or wholly incredible).

The trial court determined that, even if Petitioner's statements to police had been

suppressed, the strength of the State's case would not have been lessened (App. O at 4).  As such, it is unlikely that counsel's recommendation regarding the plea agreement would have differed if the motion to suppress had been filed. *See Hill*, 474 U.S. at 59 (assessment of counsel's ineffectiveness for failure to investigate depends largely on a prediction of whether the evidence would have changed the outcome of trial).  The trial court also noted that, at the time he entered the plea, Petitioner knew that counsel allegedly had not interviewed defense witnesses, but still chose to enter the plea (App. M at 4).  Citing Florida law, the trial court determined that Petitioner could not establish prejudice or show that his plea was involuntary because "there was no coercion, misadvise or misapprehension regarding the investigation defense counsel had done" and because Petitioner had indicated that he was satisfied with his attorney's services (App. M at 4)(quoting *Woodlet v. State*, 937 So. 2d 193 (Fla. 4th DCA 2006)).

Because Petitioner cannot show that the state court's conclusions were contrary to clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, claims four and five are denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.    *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C.

§ 2253(c)(2).   To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009).   When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Lamarca*, 568 F.3d at 934.   However, a  prisoner need not show that the appeal will succeed.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable.  Petitioner has failed to make a substantial showing of the denial of a constitutional right.   Thus, the Court will deny Petitioner a certificate of appealability.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Mark Raymond Savery is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      Petitioner is **DENIED** a Certificate of Appealability.

3.      The Clerk of the Court is directed to enter judgment accordingly and close this case.

26

**DONE AND ORDERED** at Orlando, Florida, this 10th day of November, 2010.

Copies to:

pssa 11/10

Mark Raymond Savery

Counsel of Record

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE